UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aaryana Malcolm, et al.,

                Petitioners,                Case No. 20-cv-2503 (MJD/LIB)

    v.

                              **REPORT AND RECOMMENDATION**

M. Starr, et al.,

                Respondents.

       This matter comes before the undersigned United States Magistrate Judge upon Petitioners Aaryana Malcolm, Lavell Williams, Shelle Brooks, Kristina Bohnenkamp, Carrie Casarez, Noelle Dubray, Pauline Hemicker, Kimberly Inabnit, Cassandra Kasowski, Kristen Martin, Joy Ramos, Kelly Sorenson Rafai, Katherine Reed, and Chasstady Walker's (hereinafter collectively "Petitioners") Petition for writ of Habeas Corpus, [Docket No. 1], and Petitioners' Motion for Temporary Restraining Order. [Docket No. 6]. The present case has been referred to the undersigned pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1.

       For the reasons set forth herein, the undersigned recommends that the Petition for writ of habeas corpus, [Docket No. 1], be **DENIED**, and the undersigned further recommends that Petitioners' Motion to Temporary Restraining Order, [Docket No. 6], be **DENIED**.

## I.    Procedural Background

       On December 9, 2020, Petitioners initiated the present action by filing their Petition for writ of habeas corpus. [Docket No. 1]. Petitioners are each incarcerated at the Federal Correction Institution in Waseca, Minnesota, and as discussed more fully below, they allege that prison

officials have responded to the COVID-19 pandemic in a constitutionally impermissible manner. Petitioners allege that they are each "medically vulnerable" to COVID-19. (Pet., [Docket No. 1], at ¶¶ 4–54, 160–163). In addition to their own interest, Petitioners also seek to represent a class of inmates at FCI-Waseca.

Petitioners filed their Motion for Temporary Restraining Order on December 11, 2020. (Pets.' Mot. [Docket No. 6]). In their Motion, Petitioners requested expedited handling of their Motion. (Id.).

On December 11, 2020, the undersigned issued an Order establishing a schedule for briefing to be completed on Petitioners' Motion for Temporary Restraining Order, and the undersigned scheduled oral argument on Petitioners' Motion to be heard on January 6, 2021. (Order [Docket No. 278]). This briefing has since been completed, and the Court has heard oral argument on Petitioners' Motion.

On December 11, 2020, the undersigned also issued an Order establishing a briefing schedule on Petitioners' petition for a writ of habeas corpus. (Order [Docket No. 28]). Pursuant to that Order, Respondents have filed their response to the present Petition. (Response [Docket No. 83]).[1]

## II.    The COVID-19 Pandemic

COVID-19 is an infectious illness caused by a novel coronavirus which has become a global pandemic. (Franco-Paredes Decl., [Docket No. 14], at 2–3). According to information filed by Petitioners, as of mid-October, there were 8.2 million reported case and over 220,000 deaths in the United States of America. (Id.).

---

[1] As of the date of this Report and Recommendation, there yet remains time for Petitioner's to file their reply brief; however, given the jurisdictional nature of the present recommendation, the Court finds waiting on that reply to be unnecessary.

The COVID-19 virus is thought to pass from one person to another through the expulsion of respiratory droplets (e.g., coughing or sneezing), but it is thought to also survive on various surfaces for varying periods of time. A person infected with COVID-19 may exhibit symptoms ranging from zero symptoms (asymptomatic COVID-19) to respiratory failure, kidney failure, and death. Thus, a person without symptoms may still spread the virus.

The Centers for Disease Control and Prevention (hereinafter the "CDC") has recommended that everyone wash their hands often; avoid close person to person contact through social distancing (the practice of maintaining a distance of six feet between yourself and others); isolation and quarantine; cover their mouth and nose with a cloth cover when around others; routinely clean and disinfect frequently touched surfaces; and avoid poorly ventilated areas.  See,  https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html. The CDC emphasizes that "[k]eeping distance from others is especially important for people who are at higher risk of getting very sick." Id.

According to the CDC, individuals with certain underlying medical conditions are at a higher risk for severe illness from COVID-19. See, People Who Are at Higher Risk for Severe Illness,    http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. The CDC identifies these conditions as: cancer; chronic kidney disease; chronic obstructive pulmonary disease; down syndrome; heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; immunocompromised state from solid organ transplant; obesity and sever obesity; pregnancy; sickle cell disease; smoking; and type 2 diabetes mellitus. Id.

### III.    The Nature of Petitioners' Action

Petitioners' initial filings are ambiguous as to the exact nature of the action they intended to initiate and the relief they were seeking. The document with which Petitioners initiated the present action is titled, "Class Action Complaint for Declaratory Relief and Petition for Writs of Habeas Corpus." [Docket No. 1]. Petitioners purport to assert that the Court has subject matter jurisdiction pursuant to both the doctrine of federal question jurisdiction, 28 U.S.C. § 1331, and habeas jurisdiction, pursuant to 28 U.S.C. § 2241. (Pet., [Docket No. 1], at 4). Petitioners also purport to seek to represent one class and three subclasses of individuals. (See, Id.).[2] Further complicating the matter, Petitioners appeared to have initially been seeking both habeas relief, as well as, classic civil suit relief. (See, Id. at 72–74) (seeking class certification of the proposed Class and Subclass; "issuance of a writ of habeas corpus requiring Respondents to release from custody and/or to home confinement the Petitioners;" declaratory relief finding Respondents' policies and practices regarding COVID-19 to be unconstitutional and discriminatory; an Order "declaring Respondents' review of Petitioners and Class Members for home confinement under the CARES Act was an abuse of discretion and/or arbitrary and capricious"; and the "appointment of a Special Master pursuant to Fed. R. Civ. P. 63 or an expert under Fed. R. Evid. 706 to make recommendations to the Court regarding the number of incarcerated people that FCI-Waseca can house consistent with CDC Guidance on strategies to mitigate the spread of COVID-19").

---

[2] Specifically, Petitioners seek to represent a class of all persons imprisoned at FCI Waseca who are "medically vulnerable" as defined by Petitioners. (Id. at ¶ 161). Petitioners Bohnenkamp, Casarez, DuBray, Hemicker, Inabnit, Kasowski, Malcolm, Ramos, Sorenson Rafai, Walker, and Williams seek to represent a subclass consisting of all current and future inmates at FCI-Waseca who are medically vulnerable, who have previously tested positive for COVID-19 . . . ('Subclass I')." (Id. at ¶ 162). "Petitioners Brooks, Martin, and Reed seek to represent a subclass consisting of all current and future inmates at FCI-Waseca who are medically vulnerable, who have not yet contracted COVID-19 ('Subclass II')." (Id. at ¶ 163). "Petitioners Brooks, Malcolm, Walker, and Williams also seek to represent a subclass consisting of all current and future inmates at FCI-Waseca who are medically vulnerable because of a disability as defined in the rehabilitation Act ('Subclass III')." (Id. at ¶ 164).

For these reasons, Petitioners initially appeared to seek to raise a civil claim <u>and</u> a habeas claim in the same action. (<u>See</u>, Pet. [Docket No. 1]). Litigants cannot, however, raise civil "claims (such as conditions-of-confinement claims) and habeas [release] claims in the same action." <u>Foy v. Bilderbergers</u>, No. 16-cv-454 (JNE/LIB), 2016 WL 11486912, at *3 (D. Minn. Mar. 17, 2016), (citing <u>Spencer v. Haynes</u>, 774 F.3d 467, 470–71 (8th Cir. 2014)), <u>report and recommendation adopted</u>, 2016 WL 2621952 (D. Minn. May 6, 2016); <u>see</u>, <u>Smith v. Fikes</u>, No. 20-cv-1294 (JRT/TNL), 2020 WL 6947848, at *2 (D. Minn. Oct. 12, 2020), <u>report and recommendation adopted</u>, 2020 WL 6947433 (D. Minn. Nov. 25, 2020).

Petitioners have now clarified, however, that they are raising <u>only</u> a habeas petition seeking habeas release. (<u>See</u>, Pets.' Reply, [Docket No. 73], at 2–5) (arguing that neither the Prisoner Litigation Reform Act nor "exhaustion requirements . . . preclude review" because "[t]his Court has jurisdiction under 28 U.S.C. § 2241" and further arguing that their "claims are proper under § 2241"). At the January 6, 2021, Motions Hearing, Petitioners' counsel affirmed to the Court that Petitioners are raising a habeas petition seeking habeas release. (January 6, 2021, Motions Hearing, Digital Recording at 11:12–11:16 a.m.). It is through this habeas lens that the Court must and will now review Petitioner's Motion for Temporary Restraining Order, as well as, their Habeas Corpus Petition.

"[T]he heart of habeas corpus" relief is "immediate release or a speedier release from" confinement. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498 (1973). Because Petitioners are here on the basis of a habeas petition, some of the relief they initially sought is simply <u>not</u> available as it would have possibly been in a civil complaint. For example, in their Motion for Temporary Restraining Order, Petitioners seek, among other things, an Order appointing "an independent monitor with medical expertise to ensure compliance with the measure enumerated in

Petitioner's [sic] Proposed Order . . . and directing Respondents to provide the monitor with unfettered access to medical units, confidential communications with detained individuals in and out of quarantine, and surveillance video of public areas of the facilities." (Pets.' Mot. [Docket No. 6]). Similarly, Petitioners' habeas petition seeks, among other things, the "appointment of a Special Master . . . or an expert . . . to make recommendations to the Court regarding the number of incarcerated people that FCI-Waseca can house consistent with CDC Guidance on strategies to mitigate the spread of COVID-19;" an Order declaring Respondents' COVID-19 related policies and practice at large to be unconstitutional and discriminatory; and an Order "requiring Respondent to comply with the Constitution for any Class Members who remain at FCI-Waseca, and with the Rehabilitation Act for any Subclass Members who remain . . . ."  (Pet., [Docket No. 1], at 72–73). This relief is simply not available in a habeas petition. Because the Petitioners have now clarified, and the record supports, that Petitioners are pursuing only a habeas petition seeking habeas relief, the Court need not further consider the civil-complaint type of relief initially sought.

This leaves for the Court's consideration Petitioners' habeas petition seeking relief in various forms of "release." It remains unclear whether Petitioners intend "release" to mean actual, total release outright from confinement or only being transferred to home confinement. Regardless of the exact nature of release sought, however, the Court must now determine if it retains the requisite subject matter jurisdiction to adjudicate Petitioners' habeas claims. See, Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## IV.  Subject Matter Jurisdiction

Having resolved that Petitioners are asserting a habeas claim, there remain two possible forms of relief sought by Petitioners as clarified at the hearing. On the record now before the Court including the representations of Petitioners' counsel made at oral argument, Petitioners seek either (1) immediate complete release from their terms of incarceration free and clear of all restrictions by the Bureau of Prisons, or (2) immediate transfer to home confinement. Under either circumstance, the Court lacks the requisite subject matter jurisdiction to adjudicate the Petitioners' claims.

### A.  Complete Release from Incarceration

The first possible relief being sought is that Petitioners seek an immediate complete and total release from incarceration by the Bureau of Prisons free and clear of all terms of release. The <u>only</u> possible way to achieve such a result would be a reduction in their individually imposed sentences. Petitioners could seek to do so through a mechanism referred to as "compassionate release."

Compassionate release is an exception to the general rule that a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). The mechanism of compassionate release <u>allows the sentencing court</u> to reduce a prison term "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A motion for compassionate release under § 3582(c), however, <u>must</u> be addressed to the sentencing court. <u>See, e.g.</u>, 18 U.S.C. § 3582(c)(1)(A)(i); <u>Lewis v. Warden, FMC-Rochester</u>, No. 6-cv-329 (ADM/RLE), 2006 WL 1134760, at *1 (D. Minn. Apr. 27, 2006); <u>Smoke v. United States</u>, No. 9-cv-2050 (JRT/AJB), 2009 WL 5030770, at *2 (D. Minn. Dec. 14,

2009); <u>United States v. Mendoza</u>, No. 10-cr-3131 (DWF/FLN), 2019 WL 6324870, at *4 (D. Minn. Nov. 26, 2019).

In their petition, the Petitioners fail to allege or even identify the District Court in which they were each separately sentenced. And in any event, however, no Petitioner alleges that she was sentenced by the Honorable Michael J. Davis of the District of Minnesota. (<u>See</u>, Pet. [Docket No. 1]). Thus, to the extent Petitioners seek compassionate release, this Court lacks the requisite subject matter jurisdiction to adjudicate such a claim. <u>See, e.g.</u>, <u>Lewis v. Warden, FMC-Rochester</u>, No. 6-cv-329 (ADM/RLE), 2006 WL 1134760, at *1 (D. Minn. Apr. 27, 2006); <u>Smoke v. United States</u>, No. 9-cv-2050 (JRT/AJB), 2009 WL 5030770, at *2 (D. Minn. Dec. 14, 2009); <u>United States v. Mendoza</u>, No. 10-cr-3131 (DWF/FLN), 2019 WL 6324870, at *4 (D. Minn. Nov. 26, 2019); 18 U.S.C. § 3582(c)(1)(A)(i). If any Petitioner seeks compassionate release, then she must individually seek said release from the specific Court in which she was sentenced.

**B. Habeas Relief Through § 2241**

Petitioners could also seek "release" through 28 U.S.C. § 2241. "Writs of habeas corpus may be granted by the Supreme Court, . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Under § 2241, a writ of habeas corpus shall not extend to any individual unless said individual "is in custody in violation of the Constitutional or laws or treaties of the United States." <u>Id.</u>

The United States Supreme Court has "left open the question whether [inmates] might be able to challenge their confinement conditions via a petition for writ of habeas corpus." <u>Ziglar v. Abbasi</u>, 137 S.Ct. 1843, 1862–63 (2017). The Eighth Circuit Court of Appeals, however, has specifically concluded that habeas petitions are <u>not</u> the proper vehicle to remedy constitutional

claims relating to the conditions of confinement. See, Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014) (citing Kruger v. Ericksen, 77 F.3d 1071 (8th Cir. 1996)).

In the Eighth Circuit, a habeas petitioner under § 2241 can only challenge the fact or duration of confinement. See, e.g., Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014); Heck v. Humphrey, 512 U.S. 477, 481 (1994); Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996). Challenges to the conditions of confinement cannot be addressed in habeas proceedings. Mendez v. United States, No. 12-cv-28 (ADM/FLN), 2012 WL 1110138, at *2–3 (D. Minn. Jan. 24, 2012), report and recommendation adopted, 2012 WL 1110125 (D. Minn. Apr. 3, 2012). "If the prisoner is not challenging the validity of [her] conviction or the length of [her] detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." Kruger, 77 F.3d at 1073. "Where petitioner seeks a writ of habeas corpus and fails to attack the validity of [her] sentence or the length of" her "custody, the district court lacks the power or subject matter jurisdiction to issue a writ." Id. In short, challenges to the conditions of confinement, as opposed to the length or legality of detention, are not cognizable claims in habeas petitions in the Eighth Circuit. Spencer v. Haynes, 774 F.3d 467, 469–70 (8th Cir. 2014).

In the present case, Petitioners are raising a "conditions of confinement" claim under the guise of a habeas petition. Although Petitioners purport to seek "release," they argue that "release" is warrant based not on the basis of some invalidity in the fact or duration of their confinement, but rather, on the basis of the conditions at FCI Waseca. Petitioners specifically assert in their Petition that they 'bring this action against" Respondents "on behalf of themselves and a class of individuals incarcerated at FCI-Waseca who are at elevated risk of complications and death from COVID-19, which feeds on precisely the unsafe, congregate conditions in which they are being held." (Pet., [Docket No. 1], at 3) (emphasis added). Petitioners entire argument in

the present action is that Respondents have failed to properly respond to the COVID-19 pandemic which has created unsafe conditions at FCI Waseca. This is plainly a conditions of confinement claims.

The current Petition does not present any challenge to the validity of Petitioners' convictions or the length of their individually imposed terms of incarceration. Rather, Petitioners challenge the nature of their living conditions at FCI Waseca in light of the COVID-19 pandemic. (See, Pet. [Docket No. 1]). A writ of habeas corpus is not the proper remedy for such a claim. See, e.g., Preiser v. Rodriguez, 411 U.S. 475, 489–90, 493 (1973); Spencer v. Haynes, 774 F.3d 467, 469–70 (8th Cir. 2014).

In their Motion for Temporary Restraining Order reply memorandum, Petitioners assert that this Court has "habeas jurisdiction" because unlike the petitioners in Spencer and Kruger, "Petitioners [here] directly challenge their confinement and seek release." (Pets.' Mem., [Docket No. 73], at 3). The Court finds this argument overly superficial and unpersuasive for several reasons.

First, Petitioners do not expressly seek release from their terms of incarceration as the only relief which will cure the alleged constitutional infirmities. In fact, in summarizing their Petition, the Petitioners specifically note that "because of their unlawful and unconstitutional confinement" they seek "the immediate transfer of Petitioner [sic] and class members to home confinement . . . ." (Pet., [Docket No. 1], at 3) (emphasis added).

Home confinement is considered a place of confinement or imprisonment. See, e.g., Elwood v. Jeter, 386 F.3d 842, 846 (8th Cir. 2004). A prisoner is transferred to home confinement not released to home confinement because home confinement is a place of incarceration. See, gen., Id. Being transferred to home confinement is not a "release" for

incarceration. By Petitioners' own admissions, each of the constitutional violations alleged in the Petition, as they relate to Petitioners, would ostensibly be cured if Petitioners were immediately transferred to home confinement. Unlike a circumstance where a hypothetical petitioner might argue that release from confinement is the only possible cure for a constitutional infirmity, the Petitioners here concede that a transfer to a different form of confinement, home confinement, would cure the perceived constitutional infirmities alleged in the present case. To the extent Petitioners seek for this Court to review the Bureau of Prisons' decision regarding transfer to home confinement, that decision too is not reviewable by this Court. The Court lacks the subject matter jurisdiction to review the Bureau of Prisons' discretionary decision regarding transfer to home confinement. See, e.g., Simon v. L. LaRiva, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *4–7 (D. Minn. Mar. 10, 2016), (collecting cases) report and recommendation adopted, 2016 WL 1610603 (D. Minn. Apr. 21, 2016); Smith v. Warden of Duluth Prison Camp, No. 18-cv-2555 (WMW/LIB), 2019 WL 3325837, at *4–6 (D. Minn. Apr. 23, 2019), report and recommendation adopted as modified, 2019 WL 3323063 (D. Minn. July 24, 2019).

Second, Petitioners do not in fact directly challenge the fact of their confinement. Instead, Petitioners allege that the conditions of their confinement have rendered unconstitutional their continued incarceration. Put another way, if the conditions of which Petitioners now complain were eliminated (i.e., COVID-19 and the perceived lack of adequate safety precautions), then there would be no remaining challenge to Petitioners' continued incarceration.

For these reasons, the Court concludes that it lacks the requisite subject matter jurisdiction to adjudicate the claims raised in the present habeas petition. Therefore, the undersigned recommends that the present Petition, [Docket No. 1], be **DENIED**.

### C.  Constitutional Claims

Despite the evident lack of subject matter jurisdiction, Petitioners ask the District of Minnesota to intervene to order their immediate release to either home confinement or a complete release from their individual terms of incarceration. In an abundance of caution and for purpose of completeness, the Court will address Petitioners' constitutional claims.

As observed above, Petitioners allege that FCI Waseca prison officials have responded to the COVID-19 pandemic in a constitutionally impermissible manner.  Specifically, Petitioners allege that the manner in which FCI Waseca has responded to the COVID-19 pandemic violates the Eighth Amendment to the United States Constitution and the Rehabilitation Act. (Pet., [Docket No. 1], at 3).

The Eighth Amendment to the United States Constitution prohibits the Government from inflicting "cruel and unusual punishments" on persons convicted of crimes. See, Rhodes v. Chapman, 425 U.S. 337, 344–46 (1981). Any "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment, and therefore, it violates the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation and citation omitted); see, Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference from serious medical needs") (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

To demonstrate the "deliberate indifference" necessary for pleading an Eighth Amendment violation, a prisoner must show (1) that she had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded, that need. Jolly v. Knudsen,

205 F.3d 1094, 1096 (8th Cir. 2000). To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. <u>Aswegan v. Henry</u>, 49 F.3d 461, 464 (8th Cir.1995). "Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." <u>Baez v. Rosemack</u>, No. 9-cv-2121 (RHK/LIB), 2011 WL 4062586, at *4 (D. Minn. Aug. 9, 2011) (citing <u>Coleman v. Rahija</u>, 114 F.3d 778, 785 (8th Cir. 1997)).

"Deliberate indifference is akin to criminal recklessness." <u>Drake v. Koss</u>, 445 F.3d 1038, 1042 (8th Cir. 2006). Accordingly, a prisoner claiming deliberate indifference must plead "more than negligence, more even than gross negligence . . . ." <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995). Allegations that suggest even "medical malpractice" are insufficient to support a claim for cruel and unusual punishment, and "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." <u>Popoalii v. Corr. Med. Servs.</u>, 512 F.3d 488, 499 (8th Cir. 2008).

In the present case, Petitioners, largely pointing to circumstances occurring in August 2020 and September 2020, assert that Respondents' knowledge of and deliberately disregarded of their objective medical need is demonstrated by Respondents' "woefully inadequate" plan of response to the COVID-19 pandemic; Respondents' failure to recalibrate said plans; and Respondents' failure to follow even their own plans. (Pets.' Mem., [Docket No. 29], at 30–34).[3] As presented by Petitioners, the Respondents started with a poor plan, never adjusted that plan,

---

[3] These pages numbers reflect the page numbers assigned by CM/ECF.

and never even attempted to follow their own plan. (See, Id.).[4] These assertions are unsupported by the record now before the Court.

Despite Petitioners' allegations, the response to the COVID-19 pandemic at FCI Waseca, as with the response in the community overall, has clearly evolved over time. For example, while incoming inmates were initially only "screened for COVID-19 symptoms and exposure risk factors," by at least June 2020, the incoming inmate screening process changed "to include mandatory testing and quarantine or isolation depending on whether the intakes were symptomatic." (Anne Cummins Decl., [Docket No. 68], at ¶¶ 47–49). Other portions of FCI Waseca's response to the pandemic have also evolved over time as knowledge about the virus too has evolved.

In March 2020, the number of groups simultaneously permitted into mealtimes was limited, and inmates were encouraged to maintain social distances. (Id. at ¶ 11). FCI Waseca then began administering "grab and go" meals" for breakfast and lunch with only one group attending dinner at a time. (Id.). Later "Food Service was controlled by housing unit, in groups of 10 inmates but no more than 30 inmates out of the housing unit at a time." (Id. at ¶ 19). After FCI Waseca had its first confirmed case of COVID-19 in July 2020, restrictions were increased, and a surge in cases led to those restrictions remaining in place (Id. at ¶ 21–33); however, after that surge in COVID-19 cases abated by October 2020, "units were allowed to go to the dining hall for "Grab and Go" meals . . . by housing unit." (Id. at ¶ 34).

Similarly, FCI Waseca's implementation of housing unit assignments has also evolved over the course of the COVID-19 pandemic. "On April 1, 2020, FCI Waseca implemented the Bureau's 'Stay in Shelter' order" which restricted inmate movement outside their housing unit

---

[4] Petitioners also make certain assertions regarding the actions of the Bureau of Prisons at large as opposed to circumstances that occurred at FCI Waseca. (See, e.g., Pet. Mem., [Docket No. 29], at 17). To the extent these circumstances did not directly occur at FCI Waseca, they are irrelevant to the present analysis.

while "inmates were encouraged to remain in their room or bunk areas . . . ." (Id. at ¶ 12). On April 20, 2020, Unit Team staff "reorganized some rooms to maximize social distancing," and they "advised inmates to sleep 'head to toe' in their bunks to increase the distances between their heads." (Id. at ¶ 17). "On August 25, 2020, FCI Waseca began implementing a national directive to house inmate who worked in UNICOR in one unit as much as reasonably possible." (Id. at ¶ 26). FCI Waseca also began housing inmates by individual work detail to limit possible exposure. (Id. at ¶ 27). Each of these examples patently demonstrates a COVID-19 prevention response which progressed over time.

Petitioners also allege that Respondents "knowingly contaminated infection-free living units." (Pet. Mem., [Docket No. 29], at 12–14). In support of this assertion, Petitioners point to Petitioner Inabnit's declaration in which she attests that when she arrived at FCI Waseca on August 18, 2020, she was encouraged to answer "no" regarding whether or not she had been exposed to COVID-19. (See, Id.). However, as noted above, since at least June 2020, the incoming inmate screening process changed "to include mandatory testing and quarantine or isolation depending on whether the intakes were symptomatic." (Anne Cummins Decl., [Docket No. 68], at ¶¶ 47–49). Moreover, although Petitioners' allege that Respondents "knowingly contaminated infection-free living units" by placing Petitioner Inabnit and other incoming inmates into a unit with existing FCI Waseca inmates who had not yet tested positive for COVID-19, Petitioner Inabnit acknowledges that it was not until her second COVID-19 test three days after her arrival that she tested positive for COVID-19. (Inabnit Decl., [Docket No. 12], at ¶ 16).

Similarly, the record does not support Petitioners' assertion that "Respondents have failed to provide adequate PPE and cleaning supplies" or that Respondents wholly failed to enforce

15

masking wearing requirements. (Pets.' Mem., [Docket No. 29], at 20–22). In support of this assertion, Petitioners point to their own declarations which describe isolated incidents where they observed a lack of enforcement of mask wearing, as well as, isolated incidents which they perceived as having insufficient cleaning supplies. The record does not support the contention, however, that Respondents failed to provide adequate PPE and cleaning supplies overall.

Importantly, the observations in Petitioners' declarations fail to provide any temporal context for when the individually described circumstances were observed. Thus, the Court cannot determine if these circumstances occurred before or after FCI Waseca increased COVID-19 prevention measures and restrictions.

Further, although Petitioners described individual instances of alleged non-compliance, Petitioners do not refute that since April 2020, FCI Waseca staff members have been required to wear facial coverings when social distancing is not possible. (Wieczorek Decl., [Docket No. 67], at ¶ 42). Likewise, since April 2020, inmates have been required to wear facial coverings, and they are subject to discipline if they fail to do so. (Id.) ("Inmates are required to wear facial coverings anytime while away from their immediate bunk area."). While inmates were initially provided surgical masks, on April 15, 2020, inmates were provided with washable, reusable cloth face coverings. (Id. at ¶ 40). Upon request, inmates are also provided a replacement mask at any time. (Cummins Decl., [Docket No. 68], at ¶ 42). The record further reflects that the number of cleaning supplies and the frequency of cleanings increased over the course of the COVID-19 pandemic, including the addition of "backpack sprayers for disinfecting larger surface areas"; dedicated orderlies for disinfecting "high tough areas within the housing units"; and cleaning supplies for non-orderlies to use in the communal housing units. (Id. at ¶¶ 36–42).

Moreover, many of Petitioners' declarations acknowledge the increase in the amount of PPE and cleaning supplies as FCI Waseca's response to COVID-19 has evolved. For example, Petitioner Brooks' declaration provides that despite earlier shortcoming, the "BOP is providing PPE"; FCI Waseca has "stations set outside of each unit for staff to use to change their PPE"; and FCI Waseca switched to "stronger sanitizer for cleaning . . . ." (Brooks Decl., [Docket No. 24], at ¶¶ 41, 43). Likewise, while she observes that there are no hand sanitizer stations in her unit which she can access while "locked in [her] range," she acknowledges that there is an accessible station when she is not "locked in [her] range," and she further acknowledges that she also has access to hand washing stations with antibacterial soap. (Id. at ¶ 44). Petitioner Brooks simply believes the changes came too late and are "not good enough." (Id. at ¶¶ 40–43).

At its core, the present Petition takes issue with decisions Respondents made in responding to the COVID-19 pandemic at FCI Waseca over time. In other words, Petitioners are tantamount taking issue with the treatment decisions Respondents made in response to the COVID-19 pandemic. Even assuming solely for the sake of argument that Petitioners' proposed response to the COVID-19 pandemic is arguably better than the response which has thus far occurred at FCI Waseca, that does not rise to the level of a constitutional violation. Under controlling Eighth Circuit precedent by which this Court is bound, a disagreement over the proper medical treatment or response cannot support a claim for cruel and unusual punishment. See, e.g., Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008). Even if assuming solely for the sake of argument that Respondents' conduct demonstrates gross negligence and medical malpractice, under controlling Eighth Circuit precedent this still cannot support a claim for cruel and unusual punishment. See, e.g., Drake v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006);

Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995); Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008).

Petitioners do not refute that Respondents have policies in place to combat the spread of the COVID-19 pandemic inside FCI Waseca. Although Petitioners seem to be arguing that the Eighth Amendment requires Respondents to maintain perfect compliance with those polices, perfection is not constitutionally required. See, gen., Drake v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006); Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995); Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008). Although there was a significant spread of the COVID-19 infection at FCI Waseca, Petitioners do not refute that before and as of the time of the January 6, 2021, Motions Hearing, there was only one FCI Waseca inmate with an active case of COVID-19. The limitation of a highly infectious illness to a single active case in a prison setting cannot in any reasonable way be viewed as a "deliberate indifference" to Petitioners' serious medical need.[5]

On the record now before the Court, Petitioners have failed to demonstrate that Respondents were deliberately indifferent to Petitioners' serious medical need to such a level to warrant finding a violation of Petitioners' Eighth Amendment rights prohibiting cruel and unusual punishment.[6]

---

[5] In making the current finding, the undersigned does not in any way seek to downplay the seriousness of the COVID-19 pandemic; its effect on the nation's prison population; nor the symptoms endured by the Petitioners who have contracted COVID-19. The COVID-19 virus is indisputably harmful and dangerous. The present Report and Recommendation should be viewed as only an analysis of the Petitioners' legal claims in the framework of controlling precedent by which this Court must abide.

[6] Petitioners Malcolm, William, Brooks, and Walker's Rehabilitation Act claims each suffers a similar fate. To establish a Rehabilitation Act claim, Petitioners Malcolm, William, Brooks, and Walker "must [each] demonstrate that: (1) [she] is a qualified individual with a disability; (2) [she] was denied benefits of a program or activity of a public entity which received federal funds[;] and (3) [she] was discriminated against based on [her] disability." Turner v. Mull, 784 F.3d 485, 494 (8th Cir. 2015) (quoting Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998)). Petitioners Malcolm, William, Brooks, and Walker must also each demonstrate that she requested the accommodation which she alleges was denied to her. Lue v. Moore, 43 F.3d 1203, 1205 (8th Cir. 1994); Mack v. Haarman & Reimer Corp., No. 5-96-cv-315 (RLE), 1998 WL 757967, at *15 (D. Minn. Mar. 26, 1998). Even assuming solely for the sake of argument that Petitioners Malcolm, William, Brooks, and Walker each satisfy the

## V.      Petitioners' Motion for Temporary Restraining Order. [Docket No. 6].

Through their Motion for Temporary Restraining Order, [Docket No. 6], Petitioners seek an Order of this Court "[g]ranting [their] petition for a writ of habeas corpus pending the full adjudication of the case;" "[a]ppointing an independent monitor with medical expertise to ensure compliance with the measures enumerated in the Petitioner's [sic] Proposed Order"; "directing Respondents to provide the monitor with unfettered access to medical units, confidential communications with detained individuals in and out of quarantine, and surveillance video of public areas of the facility"; and requiring Respondents to provide Petitioners' counsel with certain information regarding the proposed class and its proposed members. (Pets.' Mot. [Docket No. 6]). In general, Petitioners argue that they will suffer irreparable harm in the form of "serious illness and death" in the absence of the requested injunctive order.

When considering a motion for a temporary restraining order or preliminary injunction, the Court considers four factors: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest. S.J.W. ex rel Wilson v. Lee's Summit R7 Sch.

---

first two prongs, each Petitioner has failed to demonstrate that she was denied a requested accommodation or that she was discriminated against based on her disability. First, Petitioners Malcolm, William, Brooks, and Walker fail to even allege that they requested any accommodation from Respondents. (See, Pet. [Docket No. 1]). This is fatal to each of their Rehabilitation Act claims. Moreover, each Petitioner fails to demonstrate that she was discriminated against based on her disability. Instead, each Petitioner alleges that she was subject to some circumstance to which all other inmates were also subject due to COVID-19 prevention measures or that she more negatively affected than other inmates by the perceived lackluster COVID-19 response at FCI Waseca. For example, in an attempt to demonstrate being denied participation in prison services based on her disability, Petitioner Malcolm points to her declaration where she provides that she did not have access to phones or computers. (See, Pets.' Mem., [Docket No. 29], at 36) (citing Malcolm Decl., [Docket No. 15], at ¶ 9). However, Petitioner Malcolm specifically attests that it was the entirety of her living unit, including her and twenty other inmates, who "did not have access to phones or the computers[.]" (Malcolm Dec., [Docket No. 15], at ¶ 9). There is no allegation that these twenty other inmates were disabled as defined by the Rehabilitation Act. Thus, Petitioner Malcolm was not denied any service based on her disability; rather, she was denied the same services as were the other twenty non-disabled inmates. Petitioner Malcolm makes similar allegations regarding the circumstances when she returned from the hospital to FCI Waseca; however, she does not allege that any non-disabled inmate received differing treatment. (See, Id. at ¶ 15–21). The same is true for Petitioner Williams' assertion that there was no access to the phone in the Special Housing Unit where she was housed with other non-disabled inmates, as well as, Petitioner Walker's assertion that she, along with other newly arriving non-disabled inmates, was placed in the Special Housing Unit upon her arrival at FCI Waseca with all inmates in the Special Housing Unit having limited access to phones.

Dist., 696 F.3d 771, 776 (8th Cir. 2012) (citing Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)); see, Tom T., Inc. v. City of Eveleth, No. 3-cv-1197 (MJD/RLE), 2003 WL 1610779, at *3 (D. Minn. Mar. 11, 2003); Watts v. Fed. Home Loan Mortgage Corp., No. 12-cv-692 (SRN/JSM), 2012 WL 1901304, at *3 n.3 (D. Minn. May 25 2012) ("Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order.") (citing S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989); Jackson v. Nat'l Football League, 802 F. Supp. 266, 229 (D. Minn. 1992)); Callerons v. FSI Int'l, Inc., No. 12-cv-2120, 2012 WL 4097832, at *2 (D. Minn. Sept. 18, 2012) (explaining that these factors apply to both preliminary injunctions and temporary restraining orders). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.

Injunctive relief is extraordinary relief, and the burden of establishing the propriety of an injunction is on the movant. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); Roudachevski v. All-American Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011). A temporary restraining order or preliminary injunction cannot issue if the movant fails to demonstrate a likelihood of success on the merits. See, Beeks v. CitiMortgage, Inc., No. 14-cv-4603 (MJD/HB), 2014 WL 5704205, at *5 (D. Minn. Nov. 5, 2014); Wickner v. Larson, No. 9-cv-940 (DWF/JJK), 2010 WL 98940, at *3 (D. Minn. Jan. 11, 2010); Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005).

On the first factor of whether or not to issue a temporary restraining order, i.e., probability of success on the merits, the Court in Dataphase, "rejected the notion that the party seeking relief must show 'a greater than fifty percent likelihood that [she] will prevail on the

merits,' holding instead that 'where the balance of other factors tips decidedly toward [movant] a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Planned Parenthood Minn. N.D., S.D. v. Rounds, 530 F.3d 724, 731 (8th Cir. 2008) (citing Dataphase, 640 F.2d at 113). Thus, the Eighth Circuit has instructed District Courts considering this factor to query whether the moving party has a "fair chance of prevailing." Id. at 732.

In the present case, Petitioners have failed to demonstrate that they have a "fair chance of prevailing" on their asserted claims before this Court. For the reasons discussed above, the Court has already concluded that the District of Minnesota lacks the requisite subject matter jurisdiction to adjudicate Petitioners' clarified requests for release as relief pursuant to their habeas claims. The Court will not repeat that analysis here. It is sufficient to state that the undersigned's recommendation that Petitioners' present Habeas Corpus Petition be denied based on a lack of subject matter jurisdiction is sufficient to demonstrate that Petitioners have failed to demonstrate that they have a fair chance of prevailing on any of their claims.

Therefore, the undersigned recommends that Petitioners' Motion for Temporary Restraining Order, [Docket No. 6], be **DENIED**.

## VI.    Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.  The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

2.  Petitioners' Motion for Temporary Restraining Order, [Docket No. 6], be **DENIED**.

Dated: January 15, 2021                          s/Leo I. Brisbois
                                                 Hon. Leo I. Brisbois
                                                 United States Magistrate Judge

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.